[Civ. No. 8885.   Second Appellate District, Division Two.—December 20, 1934.]

BANK OF AMERICA (a State Banking Corporation), Appellant, v. JUAN C. SANCHEZ, Defendant; CECELIA CROSS SANCHEZ, Respondent.

Louis Ferrari, Edmund Nelson, Howard Waterman, Freston & Files and Ralph E. Lewis for Appellant.

Thomas C. Ridgway and James A. Miller for Respondent.

WILLIS, J., *pro tem.*—Appellant, plaintiff below, as successor in interest of First National Trust & Savings Bank of Whittier, sued to recover a deficiency on a note, after sale under the trust deed securing the same. The defendant makers were husband and wife, and the property described in the trust deed was found by the trial court to be separate property of the husband. The note in question was given in

1928 to the Whittier bank in the sum of $25,600, on the husband's application for a loan, to liquidate previous indebtedness of the husband to that bank, $12,500 of which was evidenced by notes secured by liens on part of the same property and signed by both husband and wife, the balance being unsecured indebtedness of the husband. At the time of signing the note in question the makers were living separate and apart and were shortly thereafter divorced. On appropriate pleadings, with prayer by respondent herein to reform the note by striking her name therefrom, and after the evidence was in and the cause submitted, the court found that in the transaction no cash was paid to respondent nor other thing of value delivered to her personally (finding XI); that at the time the note was executed the Whittier bank represented to respondent, Mrs. Sanchez, that since she was still the legal wife of Juan C. Sanchez, although separated from him, her signature was necessary upon the note and trust deed in order to make said loan valid and in order to secure the payment of same with a lien upon the property of Juan C. Sanchez, and that she would not be personally liable for said indebtedness if she signed said note and trust deed (finding XII); that prior thereto respondent had done business with the Whittier bank and knew the officers of said bank and had confidence in their statements and representations, and by reason thereof she believed in the representations so made and relied thereon and was induced and persuaded thereby and signed said note; that had it not been for said representations she would not have signed said note (finding XIII); that said representations were false and untrue and were made fraudulently and with intent and for the purpose of securing her name upon said note (finding XIV); that said signing of said note by respondent was through a mistake of law; that said mistake arose from a misapprehension of the law by respondent, in that she was advised by the bank and believed it was necessary, in order to secure the payment of said indebtedness with the property of Juan C. Sanchez, that she sign her name to said note, when as a matter of law such was not necessary, and that the bank was aware at the time that respondent had such misapprehension of the law but did not rectify the same (finding XV).

Upon these findings the court concluded that respondent was not liable or indebted on said note and was entitled to have the note reformed by striking her name therefrom and to judgment in her favor for costs. The default of defendant Juan C. Sanchez for failure to appear and answer having been taken, judgment was accordingly entered against him for $18,464.57 and interest, being the amount of the deficiency, and to reform the note by striking respondent's name therefrom, and in her favor for costs. It is from the latter portion of such judgment in favor of respondent that this appeal is prosecuted.

Appellant contends: (1) That the evidence is insufficient under the law to sustain the findings of fraud and mistake of law; (2) that misrepresentation of law is not basis for fraud; and (3) that the escrow officer of the payee bank had no authority to bind the bank by a promise of nonliability.

This last point is predicated on a premise which is nonexistent. There is neither evidence nor finding in the record to support the assumption that a promise of nonliability was made by the bank officer. What he stated was declaratory and not promissory, and consisted in a representation on his part that respondent would not be liable for the indebtedness if, as wife of the borrower, she signed the note along with the trust deed. That feature of the case constitutes part of the basis of the fraud alleged and found, and must be considered only in connection with that problem.

Mindful of the rule that fraud must always be proved by clear and satisfactory evidence, we have examined the record herein, in view of appellant's first contention, and find therein substantial evidence tending to prove that the representations were made as found by the trial court, and that as a result thereof the mistake of law arose and existed at the time respondent signed the note in question. Respondent gave positive testimony as to the making of the representations as found by the court, her belief thereof and her reliance thereon. There was a partial corroboration by her husband. Opposed to this testimony was that of the escrow officer to the effect that he did not remember any such representations having been made by him; that nothing was said about nonresponsibility, but that he did tell respondent that the bank required her to sign the note and

trust deed. This at most only results in a conflict. █
Fraud being an issue, it was for the trial court to determine
the weight of the evidence; and if there was any substantial
evidence tending to prove fraud, it was for the trial court
to determine whether such evidence outweighed or prepon-
derated over that adduced in opposition thereto. When
the trial court has found that such evidence does so prepon-
derate, its decision thereon is final, and an appellate court
has no right or authority to disturb such a finding. (*Noll*
v. *Baida,* 202 Cal. 98 [259 Pac. 433]; *Divani* v. *Donovan,*
214 Cal. 447 [6 Pac. (2d) 247].)

This leaves for determination appellant's other contention,
namely, that misrepresentation of law is not basis for fraud.
Restated in a logical and condensed form, the findings estab-
lish this proposition: that by means of the misrepresenta-
tions of law by the bank officer, respondent was led into a
misapprehension of the law, and as a result was induced to
sign her name to the note in question. It thus appears that
the primary cause in the transaction was the misrepresen-
tation of law by the bank officer, and the ultimate effect was
respondent's act of signing the note. This reduces the ele-
ment of mistake of law to an intermediate position, as part
of the chain from cause to effect, and deprives it of the
quality or character of a separate and distinct ground of
voiding the contract evidenced by the note. The mistake of
law was a constituent and integral part of the fraud alleged
and found, and must be so considered and allocated in deter-
mining this case.

█ It is undoubtedly the general rule that deception as
to matters of law does not amount to fraud and will not
furnish a ground for the rescission of a contract. But this
rule, like many others in law, has its exceptions. One most
commonly known and recognized arises in such cases and
avoids the rule where the parties to the contract occupy con-
fidential or fiduciary relations; another similarly arises with
like effect where one who has had superior means of infor-
mation possesses a knowledge of the law and thereby gains
an unconscionable advantage of another who is ignorant and
has not been in a situation to become informed. In either
of these cases the injured party is entitled to relief, and in
the latter case the right to relief is predicated on the same
ground as if the misrepresentations of law were matters of

fact. (*Champion* v. *Woods,* 79 Cal. 17 [21 Pac. 534, 12 Am. St. Rep. 126].)

█ The first exception above noted is not limited to those cases in which there exist confidential or fiduciary relations in the strict sense of those terms as ordinarily understood to apply to persons in various legal relations in which the law imports a fiduciary relationship, but has been extended to every possible case in which a fiduciary relation exists as a fact. Such relation need not be legal; it may be moral, social, domestic or merely personal. (*Robbins* v. *Law,* 48 Cal. App. 555 [192 Pac. 118].) It has been many times held by our appellate courts that to entitle one to relief on the ground of fraud it is sufficient to show the existence of such friendly relations during a period of several years between the parties as would entitle the injured person to place confidence in the integrity and honesty of the other party to a contract and in the truth of whatever representations the latter made to the former with regard to the transaction between them. (*Scovill* v. *Guy,* 205 Cal. 386 [270 Pac. 934], and cases therein cited.)

█ The evidence herein shows that the parties did not occupy any of the conventional or statutory relations which are declared to be fiduciary. Nor do the facts herein show the existence of such confidential relations as would bring this case within the provisions of section 2219 of the Civil Code, defining what constitutes trusteeship. But there is substantial evidence of respondent's previous business relations with the bank over a period of years in the matter of signing notes and other papers, of her husband's former employment therein and of her acquaintance with and confidence in the officers of the bank. There is also evidence supporting the inference that the escrow officer of the bank, having had many years' experience in the matter of real estate titles and of loans to married persons involving real estate security, had had a source and means of information as to the law affecting the rights of · fixing the obligations of married persons far superior to that of respondent, who, under the proofs herein, was chiefly engaged in managing her home and taking care of her children; and that notwithstanding the legal presumption of knowledge of the law, the evidence creates the inference that she was in fact ignorant of the intricacies of the law relating to community and sep-

arate property of spouses when used as security, and the rights and duties in respect thereto. And there is, furthermore, a reasonable and justifiable inference from all the evidence touching the transaction in question that respondent had been, and was held at the time of signing, in a situation such as to prevent her from becoming better informed. These several elements combined go to make a case fairly within the limits of both exceptions above noted; and the trial court having found on substantial evidence the existence thereof, and the relations giving rise to confidence, and having further found that the representations were false and fraudulent and were made with intent to induce respondent to enter into the contract, actual fraud as defined by section 1572 of the Civil Code is established and respondent is entitled to assert the same as a defense to the action on the note.

We find no merit in appellant's claim that certain portions of the findings, other than those hereinabove reviewed, are unsupported by or are opposed to the evidence. We have considered them in the light of appellant's contentions, and note that the portions referred to relate to incidental or detail matters which do not affect the question of fraud upon which the relief herein was founded.

The judgment is affirmed.

Stephens, P. J., and Crail, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 18, 1935.

Preston, J., voted for a hearing.